UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER ROBINSON,

        Plaintiff,                         Case No.

v.                                         Hon.

WIZARDS OF THE COAST.

        Defendant.

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Kara@hurwitzlaw.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Amber Robinson ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, and hereby states the following:

## INTRODUCTION

1. Plaintiff attempted to take protected maternity leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Instead of being given the time and opportunity to care for her newborn baby, Defendant Wizards of the Coast, immediately terminated Plaintiff's employment. And only

1

after terminating Plaintiff and making her believe that she had lost her job for several months, Defendant attempted to "un-fire" Plaintiff after learning that she intended to sue the Company. Of course, Defendant's "notice of termination itself constitutes an adverse employment action, even when the employer later rescinds the termination." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 305–06 (2d Cir. 2017); *Fowler v. AT&T, Inc.*, 19 F.4th 292, 300–01 (3d Cir. 2021) ("a notice of termination . . . is an adverse employment action."); *Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019) (concluding that "the mere notice of termination is a cognizable adverse employment action regardless of whether the employer follows through"); *Almond v. Unified Sch. Dist.,* 665 F.3d 1174, 1177 (10th Cir. 2011).

## JURISDICTION AND PARTIES

2. Plaintiff is an individual residing in Ann Arbor, Washtenaw County, Michigan.

3. Defendant is a corporation headquartered in Renton, Washington, though registered under the laws of Delaware.

4. Plaintiff claims violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, consequently the United States District Court for the Eastern District of Michigan has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Additionally, the United States District Court for the Eastern District of Michigan has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, and Plaintiff Amber Robinson is now, and at all relevant times was, a citizen domiciled in the State of Michigan. Moreover, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b), as it is the district in which a substantial part of the events giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates by reference the foregoing paragraphs.

8. In or about 2013, Plaintiff was first hired by Defendant through Defendant's acquisition of Plaintiff's prior employer. On or about April 15, 2022, Plaintiff was promoted to the position of Customer Support Manager with a remuneration package comprising a salary of $88,000.12 per year, a 15% annual bonus, and medical and retirement benefits.

9. On or about January 5, 2023, Plaintiff notified Defendant that she would require maternity care leave under the FMLA.

10. On that date, Plaintiff discussed her maternity care leave requirements with her manager, John Kozar, and specifically stated that she would require protected leave under the FMLA.

11. On or about January 10, 2023, Plaintiff informed Defendant's Human Resources Business Partner, Courtney Crooks, of Plaintiff's need for leave under the FMLA and said that the expected her leave to begin around April 2023.

12. Only weeks later, in or about early March 2023, Plaintiff received her first poor performance review in her 10-year employment with Defendant.

13. Prior to this performance review, Plaintiff had received only positive reviews throughout her tenure of employment with Defendant.

14. On or about March 30, 2023, Plaintiff received a telephone call from Mr. Kozar and a member of Defendant's Human Resources department in which she was informed that she was terminated. She was told that she would receive a 10-week severance payment and that the termination agreement was being prepared. Her termination came only days before Plaintiff's child was to arrive and her leave under the FMLA was to begin.

15. On or about April 4, 2023, Plaintiff received a text message from Ms. Crooks stating the following:

> [O]kay, I'm trying to track down the agreement for your state. I realized I drafted yours on the WA state template[.] [W]ant to put this in writing so you have it while I get the agreement over to you:

- 10 weeks of severance pay
- 10 weeks of continued benefits (medical/dental.vision)
- pto payout will be included in your final paycheck

16. Plaintiff was informed by Defendant that her last day of employment was to be April 7, 2023.

17. On or about April 5, 2023, Plaintiff asked Mr. Kozar what she should tell her colleagues. Mr. Kozar replied:

> Just tell them your last day at Wizards is on 4/7 and that your responsibilities will be handed off to Tim and Kat.

18. Plaintiff received an outpouring of support from her colleagues, who messages her with farewell wishes including: "Thanks for everything!", "Best of luck in your next adventure", and "Absolutely our loss."

19. On or about April 7, 2023, Plaintiff welcomed her child. She sent an email to Ms. Crooks, copying the Company's "Hasbro Leaves" general leave email address, stating that she had not had time to seek legal advice but insisted that she remained an active employee on FMLA leave and confirmed that she would reach out to secure her transition back to work after her maternity leave.

20. Defendant failed to respond to Plaintiff's email.

21. On or about April 12, 2023, Plaintiff sent another email to Ms. Crooks, this time copying Ms. Crooks' manager, Kerry McDonald, as well as the Hasbro Leaves address. Plaintiff again asked for confirmation of her FMLA leave.

22. Defendant failed to respond to Plaintiff's email.

23. In or about May 2023, Plaintiff received a notice of COBRA benefits in her mail.

24. On or about June 22, 2023, Plaintiff once again emailed Ms. Crooks, Ms. McDonald, and the Hasbro Leaves address, stating that she had properly taken FMLA leave and was prepared to return to work on June 27, 2023.

25. Defendant failed to respond to Plaintiff's email.

26. On or about June 27, 2023, Plaintiff sent a text message to Ms. Crooks informing her that she was returning to the office the following day to understand what had happened regarding her FMLA leave. Ms. Crooks replied: "welcome back".

27. The following day, June 28, 2023, Ms. Crooks informed Plaintiff that she was an "active employee" and told her to contact her manager for work assignments.

28. Mr. Kozar, too, continued the strange charade of pretending that Plaintiff had not been terminated in anticipation of her FMLA leave. He too said "welcome back" and refused to acknowledge that he had terminated Plaintiff.

29. Defendant's refusal to acknowledge Plaintiff's termination came despite her being explicitly told by her manager and Defendant's Human Resources department that she was terminated, her being provided with terms of separation, and being instructed to inform her colleagues that she was leaving.

30. On or about July 7, 2023, counsel for Plaintiff sent legal correspondence to Defendant, to which Ms. Crooks and counsel for Defendant stated that Plaintiff was never terminated.

31. On or about July 10, 2023, counsel for Plaintiff sent the following email to Defendant:

> Wizards has created a very unfortunate situation here. After [Plaintiff] notified [Defendant] of her need for maternity leave, she was given a poor performance review. On March 30, 2023, Mr. Kozar told her she was terminated. On April 4, 2023, she received formal terms of her separation and told to await a termination agreement, including 10 weeks' pay and benefit continuation. On April 5, 2023, Mr. Kozar told [Plaintiff] to tell her coworkers that her last day was April 7, 2023. [Plaintff] even received a formal notice of COBRA benefits. So don't tell me that "she has not been terminated." If you could only understand the mental anguish my client suffered and how difficult it was for her to reconcile being fired right before she got to celebrate one of the most important moments of her life.
>
> I believe instead that [Defendant] is attempting to offer Ms. Robinson reinstatement. Is that correct? If so, I need to understand whether this is an unconditional offer of reinstatement under the law, whereby [Plaintiff] is being offered a full-time position without having to relinquish any legal claims she has against [Defendant]. If you are making her an unconditional offer of reinstatement, I will confer with my client and let you know whether she is interested in reinstatement.

32. Defendant, in fact, never responded to the email request and never offered Plaintiff an unconditional offer of reinstatement.

33. On or about July 21, 2023, Plaintiff received an email from Defendant stating that Plaintiff had abandoned her employment and that she would be terminated, again, on July 26, 2023.

34. Defendant appears to claim, despite terminating Plaintiff prior to her maternity care leave, making her a separation offer, and telling her to inform her coworkers that she had been terminated, that Plaintiff had somehow voluntarily terminated herself at the conclusion of her maternity leave through abandonment.

35. An employer's "notice of termination itself constitutes an adverse employment action, even when the employer later rescinds the termination." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 305–06 (2d Cir. 2017). Defendant terminated Plaintiff, which is itself an adverse action.

36. Defendant then refused to offer Plaintiff an unconditional offer of reinstatement and presented Plaintiff with a letter stating that she had abandoned her job on July 21, 2023.

37. Plaintiff was unequivocally terminated on March 30, 2023 and never formally offered reinstatement, so it is impossible for her to have abandoned her job.

38. It is axiomatic that "a notice of termination . . . is an adverse employment action." *Fowler v. AT&T, Inc.*, 19 F.4th 292, 300–01 (3d Cir. 2021); *Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019) (concluding that "the mere notice of termination is a cognizable adverse employment action

8

regardless of whether the employer follows through"); *Almond v. Unified Sch. Dist.,* 665 F.3d 1174, 1177 (10th Cir. 2011).

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA") INTERFERENCE AND RETALIATION

39. Plaintiff incorporates by reference herein the foregoing paragraphs.

40. Plaintiff was eligible for leave under the FMLA because she had been employed by Defendant for more than 12 months and had worked full-time for Defendant during the 12-month period prior to her leave. 29 U.S.C. §2611(2)(A).

41. Plaintiff was entitled to leave under the FMLA "because of the placement of a son or daughter with the employee for adoption" 29 U.S.C. § 2612.

42. Defendant was a covered employer for the purposes of the FMLA because it employs more than 50 people and has done so for more than 20 work weeks in the current and preceding calendar year. 29 C.F.R. §825.104.

43. The Department of Labor ("DOL") regulations specifically prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempting to exercise his or her rights under that statute. 29 C.F.R. § 825.220(c).

44. Plaintiff engaged in protected activity when she gave notice to Defendant on January 5, 2023, that she required FMLA maternal care leave.

9

45. Plaintiff suffered adverse employment actions when she was terminated on March 30, 2023.

46. The proffered reason for his termination is pretextual. Plaintiff was retaliated against for taking leave under the FMLA.

47. Defendant's actions were knowing and willful.

48. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

49. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A. Compensatory damages for monetary and non-monetary loss,

B. Exemplary, liquidated, and punitive damages;

C. Prejudgment interest;

D. Attorneys' fees and costs; and

  E. Such other relief as in law or equity may pertain.

           Respectfully Submitted,

           HURWITZ LAW PLLC

           */s/ Noah S. Hurwitz*
           Noah S. Hurwitz (P74063)
           Attorneys for Plaintiff
           340 Beakes St. Ste. 125
           Ann Arbor, MI 48104

Dated:  July 25, 2023

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AMBER ROBINSON,

      Plaintiff,                                Case No.

v.                                             Hon.

WIZARDS OF THE COAST.

      Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Kara@hurwitzlaw.com

---

## JURY DEMAND

Plaintiff Amber Robinson, by and through her attorneys, HURWITZ LAW PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                                         Respectfully Submitted,
                                                         HURWITZ LAW PLLC

                                                         */s/ Noah S. Hurwitz*
                                                         Noah S. Hurwitz (P74063)
                                                         Attorneys for Plaintiff
                                                         340 Beakes St. Ste. 125
Dated: July 25, 2023                             Ann Arbor, MI 48104